IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

MORGAN KEEGAN & COMPANY, INC.,
Planteiff,

v.                                                                Civil No. JFM-11-2533

LOUISE SILVERMAN TRUST, et al.,
Defendants.

MEMORANDUM

On September 8, 2011, Plaintiff Morgan Keegan & Company, Inc. ("plaintiff" or "Morgan Keegan") filed a complaint against defendants Louise Silverman Trust, Max Silverman, and Louise Silverman (collectively "defendants") seeking declaratory and injunctive relief to preclude defendants from pursuing an arbitration proceeding they have filed against Morgan Keegan before the Financial Industry Regulatory Authority ("FINRA").[1]

Now pending before this court is Morgan Keegan's Motion for a Preliminary Injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. For the reasons that follow, I grant Morgan Keegan's motion.

---

[1] FINRA, formerly known as the National Association of Securities Dealers, Inc. ("NASD"), is a not-for-profit corporation registered with the Securities and Exchange Commission and is the largest independent regulator for all securities firms doing business in the United States. *See* About FINRA, http://www.finra.org/AboutFINRA (last visited Dec. 12, 2012). FINRA was established under Section 15A of the Securities Exchange Act of 1934, 15 U.S.C. § 78o-3, and is vested with the "authority to exercise comprehensive oversight over all securities firms that do business with the public." *UBS Fin. Servs., Inc. v. W. Va. Univ. Hosp., Inc.* 660 F.3d 643, 648 (2d Cir. 2011) (quoting *Sacks v. SEC*, 648 F.3d 945, 948 (9th Cir. 2011).

I.      Background

On or about August 2, 2011, defendants filed a Statement of Claim with FINRA Dispute Resolution, Inc.[2] pursuant to the FINRA Code of Arbitration procedure, seeking to arbitrate the following claims against Morgan Keegan, a Tennessee-based broker-dealer: (1) fraud and negligent misrepresentation; (2) negligence; (3) failure of supervision; (4) vicarious liability; (5) violations of the Tennessee Securities Act; and (6) violations of the Tennessee Consumer Protection Act.  (Compl. ¶¶ 9–10; Compl. Ex. A.)  The FINRA Statement of Claim was then served on Morgan Keegan on or about August 9, 2011.  (Compl. ¶ 9.)    All the claims defendants seek to arbitrate relate to defendants' alleged purchases of Regions Morgan Keegan Funds ("RMK Funds" or "the Funds") (Compl. ¶ 11.)

Morgan Keegan contends defendants purchased the Funds through an unrelated, third-party broker-dealer and never had any contractual or other relationship with Morgan Keegan.  (Compl. ¶¶ 12–15).  Therefore, Morgan Keegan avers defendants have no legal basis to compel Morgan Keegan to arbitrate before FINRA.  (Compl. ¶ 13.)  Although defendants admit they did not maintain a brokerage account with Morgan Keegan, they argue that FINRA Rule 12200 provides a legal basis for them to arbitrate their claims against Morgan Keegan.  (Defs.' Answer 3–4, ECF No. 26).

Morgan Keegan's filed a motion for a preliminary injunction on October 6, 2011.

II.     Analysis

---

[2] FINRA Dispute Resolution, Inc. is a wholly owned subsidiary of FINRA and provides a forum for, among other things, costumers to bring arbitration claims against their securities broker-dealers.  *See* About FINRA Dispute Resolution Fact Sheet, http://www.finra.org/ArbitrationMediation/AboutFINRADR/Overview/FactSheet/ (last visited Dec. 12, 2011).

This action arises under the Federal Arbitration Act, 9 U.S.C. § 4, which vests this court with original subject matter jurisdiction pursuant to 28 U.S.C. § 1331. The "question of arbitrability" is "an issue for judicial determination [u]nless the parties clearly and unmistakably provide otherwise." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (internal quotation marks and citations omitted); *see Local Union No. 637, Int'l Bhd. of Elec. Workers v. Davis H. Elliot Co.*, 13 F. 3d 129, 132 (4th Cir. 1993) ("[T]he arbitrator's jurisdiction is a question for the court."). The defendants did not have an arbitration agreement with Morgan Keegan; therefore, it is properly within this court's power to decide whether arbitration is appropriate and to enjoin or compel arbitration as is appropriate. *See* 9 U.S.C. §§ 9-11; s*ee also PCS 2000 LP v. Romulus Telecomms., Inc.*, 148 F.3d 32, 35 (1st Cir. 1998) ("We have held squarely that the power to enjoin an arbitration is the concomitant of the power to compel arbitration . . . the same provision of the FAA, 9 U.S.C. § 4 authorizes both [compelling arbitration and staying arbitration]."); *Morgan Keegan & Co. v. Shadburn*, --- F. Supp. 2d. ---, No. 2:11-CV-624-WKW, 2011 WL 5244696, at *2 n.3 (M.D. Ala. Nov. 3, 2011) (citing several district courts invoking the power to enjoin investor arbitrations).

Preliminary injunctions are governed by Rule 65(a) of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 65(a). The Federal Rules, however, do not provide a standard or describe the specific circumstances for when a preliminary injunction is appropriate. The court, therefore, must engage in a balancing of the equities; on the one hand preventing irreparable harm to the plaintiff, but on the other hand, preventing a burden on the defendant that might later be proven unjustified. A proper assessment includes several factors, principal among them (1) the probability that the plaintiff will succeed on the merits; (2) the significance of the threat of irreparable harm to plaintiff if the injunction is not granted; (3) the balance between this harm

and the injury that granting the injunction would inflict on the defendant; and (4) the public's interest.  *See*, *Winter v. Natural Res. Def. Counsel, Inc.*, 555 U.S. 7, 24–25 (2008);  *NaturaLawn of Am., Inc. v. West Group, LLC*, 484 F. Supp. 2d 392, 398 (D. Md. 2007) (citing *Rum Creek Coal Sales, Inc. v. Caperton*, 926 F.2d 353, 359 (4th Cir. 1991).

      a.   Likelihood of Success on the Merits[3]

Morgan Keegan claims that defendants have no basis to compel Morgan Keegan to submit to FINRA arbitration because there is no agreement to arbitrate between Morgan Keegan and defendants, and defendants are not Morgan Keegan's "customers" under FINRA rules which, if applicable, would make defendants' claims arbitable.  (Compl. ¶ 1.)  Morgan Keegan presents a strong prima facie case; therefore, there is a high likelihood that Morgan Keegan will ultimately obtain a declaratory judgment in its favor.

The facts are largely undisputed.  There is no arbitration agreement between Morgan Keegan and the defendants. The only potential basis then upon which defendants can force Morgan Keegan to arbitrate is by way of Morgan Keegan's FINRA membership.[4]  *See Royal Alliance Assocs., Inc. v. Branch Ave. Plaza, L.P.*, 587 F. Supp. 2d 729, 734 (E.D. Va. 2008) ("Because [the parties] never entered into an arbitration agreement, any requirement [to] submit to arbitration stems from the governing rules of FINRA . . . .").  Morgan Keegan acknowledges that it is a member of FINRA and therefore must abide by its governing rules and regulations, including FINRA's Code of Arbitration Procedure (the "Code").  *See* FINRA Bylaws art. 4 § 1,

---

[3] Likelihood of success on the merits is the likelihood that Morgan Keegan will obtain a declaratory judgment finding defendants have no grounds to compel Morgan Keegan to arbitrate its claims before FINRA.  The merits of defendants' underlying claims against Morgan Keegan are irrelevant — the issue is whether FINRA arbitration is appropriate and not whether the underlying claims in the FINRA arbitration are meritorious.

[4] Defendants do not argue that they are entitled to FINRA arbitration by way of their "customer" relationship with their third-party broker-dealer.

http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4609 (last visited Dec. 12, 2011); FINRA Code of Arbitration Procedure, http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4096 (last visited Dec. 12, 2011). Rule 12200 of the FINRA Code, titled Arbitration Under an Arbitration Agreement or the Rules of FINRA, states:

> Parties must arbitrate a dispute under the Code if:
> - Arbitration under the Code is either:
>     (1) Required by a written agreement, or
>     (2) Requested by the customer;
> - The dispute is between a customer and a member or associated person of a member; and
> - The dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

FINRA Rule 12200, http://finra.complinet.com/en/display/display_main.html?rbid=2403&element_id=4106 (last visited Dec. 12, 2011). Essentially, under Rule 12200 an investor can compel a FINRA member, with whom the investor has no arbitration agreement, to arbitrate the investor's claims provided (1) the investor is a customer; and (2) the claim relates to the FINRA member's business activities. The first question is whether the defendants are "customers." The Code, however, fails to throughout articulate what amounts to a "customer" relationship. Instead, the Code defines "customer" in the negative, stating that a customer "shall not include a broker or dealer." FINRA Rule 12200. That is the extent of the definition. The only other FINRA source that provides more information is the Glossary of Arbitration Terms, which defines a customer as "a person or entity (not acting in the capacity of an associated person or member) that transacts business with any member firm and/or associated person." FINRA Glossary of Arbitration Terms, http:// www. finra. org/ Arbitration Mediation/ Glossary (last visited Jan. 3, 2012). While

5

the Fourth Circuit has not further defined or specified who is a "customer" within the meaning of FINRA Rule 12200, in *Fleet Boston Robertson Stephens, Inc. v. Innovex, Inc.,* 264 F.3d 770, 772 (8th Cir. 2001), the Eighth Circuit Court of Appeals interpreted "customer" to mean an individual who is "involved in a business relationship with [a FINRA][5] member that is related directly to investment or brokerage related services." *Id*. The Eighth Circuit was clear that reading "customer" broadly was inappropriate and purposefully declined to assert "that the [FINRA Rules] require a member to submit to arbitration in every dispute that involves its business dealings with a non-member." *Id*. at 773. The purported "customer" in *Fleet*, like the defendants in the present case, did not receive any investment or brokerage related services from the FINRA member it sought to compel to arbitrate, but rather, only received financial advice, which the court concluded was insufficient to form the basis of a "customer" relationship. *Id*.

Several courts have followed the Eight Circuit's interpretation of "customer" and found for Morgan Keegan in cases arising from nearly identical facts to those in the present case. Although not binding on this court, these decisions provide significant persuasive support for Morgan Keegan's high likelihood of success on the merits. As in the case at hand, in each of these cases Morgan Keegan sought declaratory and injunctive relief against defendants who attempted to compel Morgan Keegan to arbitrate before FINRA claims stemming from purchases

---

[5] This case refers to NASD membership, however it is widely acknowledged that interpretations and court decisions relating to the NASD Code are applicable to the FINRA Rules with respect to identical provisions. *See Kashner Davison Secs. Corp. v. Mscisz*, 601 F.3d 19, 21 (1st Cir. 2010); *Gonchar v. S.E.C.*, 409 F. App'x 396, 398 n.1 (2d Cir. 2010). FINRA Rule 12200 is identical to NASD Rule 10301. *See J.P. Morgan Secs. Inc. v. La. Citizens Prop. Ins. Corp.*, 712 F. Supp. 2d 77–78 (S.D.N.Y. 2010). The NASD Code of Arbitration was the predecessor to the FINRA Code and FINRA has stated that it intended no substantive change when it replaced NASD Rule 10301 with FINRA Rule 12200. *See* Comparison Chart of Old and New NASD Arbitration Codes for Customer Disputes, Rule 12200, http://www.finra.org/web/groups/industry/@ip/@reg/@rulfil/documents/rulefilings/p018366.pdf (last visited Dec. 22, 2011).

of shares of RMK Funds. *See Morgan Keegan & Co. v. McPoland*, --- F. Supp. 2d ---, No. C11-1471RSM, 2011 WL 6326956 (W.D. Wash. Dec. 6, 2011) (preliminary injunction granted)*; Morgan Keegan & Co. v. Jindra*, No. C11-570BHS, 2011 WL 5869586 (W.D. Wash. Nov. 22, 2011) (preliminary injunction granted); *Morgan Keegan & Co. v. Ras*, No. 5:11-cv-352-KKC, 2011 WL --- (E.D. Ken. Nov. 14, 2011) (preliminary injunction granted); *Morgan Keegan & Co. v. Drzayick*, No. 1:11-CV-126-EJL, 2011 WL 5403031 (D. Idaho Nov. 8, 2011) (preliminary injunction granted); *Morgan Keegan & Co. v. Shadburn*, --- F. Supp. 2d ---, No. 2:11-CV-624-WKW, 2011 WL 5244696 (M.D. Ala. Nov. 3, 2011) (preliminary injunction granted); *Morgan Keegan & Co. v. Garrett*, --- F. Supp. 2d ---, No. 4:10-cv-04308, 2011 WL 4716060 (S.D. Tex. Sept. 30, 2011) (vacated arbitration award because, among other issues, FINRA lacked authority to hear investors' claims); *Zarecor v. Morgan Keegan & Co.*, No. 4:10-cv-1643-SWW, 2011 WL 5592861 (E.D. Ark. July 29, 2011) (vacated arbitration award because FINRA lacked authority to hear investors' claims).[6] These cases all addressed the arbitrability of claims brought by defendant investors against Morgan Keegan based upon alleged material misrepresentations and omissions made by Morgan Keegan as underwriters of the RMK Funds. *McPoland*, 2011 WL 6326956, at *1. The defendants never invested in the RMK Funds through Morgan Keegan, nor did they have a brokerage account or any other relationship with Morgan Keegan. *Id*. Rather, they invested in the Funds through a third-party broker-dealer. *Id*. The courts noted defendants' lack of any contractual or other relationship with Morgan Keegan and deemed them outside the scope of the "customer" relationship under FINRA 12200, leaving defendants with no grounds to compel arbitration. *Id*. at *4.

---

[6] To prevent unreasonable string cites after each statement, I cite only to the most recent decision in the remaining part of this paragraph. The most recent case is representative of the entire group of cases. All the cases confront nearly identical facts, differing only in the party seeking to arbitrate claims against Morgan Keegan.

Here, the undisputed facts are nearly identical to the cases brought against Morgan Keegan by other investors in other jurisdictions — defendants did not have a business relationship with Morgan Keegan that related directly to investment or brokerage related services. In fact, there is no evidence of any relationship at all between the parties or representatives of the parties. Morgan Keegan asserts it "conducted a reasonable search of its records and determined that Defendants never entered into any agreement with Morgan Keegan, never maintained any accounts at the firm, and never received investment advice from the firm." (Mem. Supp. Morgan Keegan's Mot. Prelim. Inj. 4, ECF No. 14-1.) Defendants themselves do not contest the fact that they never held an account with Morgan Keegan and never had any sort of direct relationship with Morgan Keegan. (Mem. Supp. Defs.' Opp. 5–6, ECF No. 27.) The Southern District of Texas perfectly encapsulated the tenuous relationship between Morgan Keegan and the defendant in *Morgan Keegan & Co. v. Garret*, which aptly applies to the case at hand as well:

> [Investors seeking to arbitrate their claims] were not Morgan Keegan's customers. A customer has a direct relationship with a firm. [The investors] bought shares in the fund from third-party brokers on the secondary market. Their information was from the street. They never gave money to Morgan Keegan. They never contacted Morgan Keegan for advice. They had no direct relationship with Morgan Keegan.

2011 WL 4716060, at *1.

Defendants contend, however, that even absent a direct connection, they are Morgan Keegan's "customers" under Rule 12200 because when making purchases of RMK Funds their third-party broker-dealer relied on alleged material misstatements in the RMK Funds' prospectuses, quarterly glossies, commentaries, and reports. (Mem. Supp. Defs.' Opp. 5–6.) Acknowledging that the "customer" relationship defined by *Fleet Boston* and relied upon by several courts in the recent Morgan Keegan cases is unfavorable, defendants aver that this

narrowed definition of the "customer" relationship is erroneous. The support for defendants' proposition, however, is weak. Defendants cite *UBS Fin. Servs., Inc., v. W. Va. Univ. Hosp., Inc.,* 760 F. Supp. 2d 377 (S.D.N.Y 2011), that in relevant part was affirmed on appeal.[7] *UBS Fin. Servs., Inc., v. W. Va. Univ. Hosp., Inc.,* 660 F.3d 643 (2d Cir. 2011). Discussing the lower court's finding of a "customer" relationship, the Second Circuit specifically declined to rule on the more ambiguous question of whether or not an issuer is a customer of its underwriter and instead agreed with the Southern District on a clearer basis — the direct purchase of services from the FINRA member. *Id*. at 650. Additionally, defendants cite an unreported case, *Wachovia Bank, N.A. v. VCG Special Opportunities Master Fund, Ltd.,* 2010 WL 1222026 (S.D.N.Y.2010). However, the District Court's decision was reversed on appeal. *Wachovia Bank, N.A., v. VCG Special Opportunities Master Fund, Ltd.,* 661 F. 3d 164, 172–74 (2d Cir. 2011). The Second Circuit found that the FINRA member did not provide any agency, brokerage, advisory, or fiduciary services to the purported customer sufficient to establish a "customer" relationship under Rule 12200. *Id*. at 174. Finally, plaintiffs rely on the Eleventh Circuit's finding of a "customer" relationship in *Multi-Financial Securities Corp. v. King*, 386 F.3d 1364 (11th Cir. 2004). However, the facts of the present case are clearly different. In *King*, there was an undisputed relationship between the purported customer and an associated person of the FINRA member. *Id*. at 1368. The case therefore centered more on the issues surrounding what amounts to an "associated person's customer," rather than what is sufficient to establish a direct "customer" relationship between an investor and FINRA member. *Id*. at 1368–69. In the present case, the third-party broker dealer was not an associated person of Morgan Keegan.

---

[7] In addition to denying UBS' motion for preliminary injunction, the District Court found that the requested arbitration had to be conducted in New York pursuant to a forum selection clause. This portion of the District Court opinion was vacated.

In sum, defendants provide no authority that persuades me to read "customer" so broadly as to include the tenuous relationship between defendants and Morgan Keegan. I find it more appropriate to follow the interpretation articulated by the Eight Circuit in *Fleet Boston* and subsequently adopted by every court that has addressed similar claims brought against Morgan Keegan. Interpreting "customer" so broadly as to include everyone who is not a broker or a dealer disregards the actual relationship between the claimant and a FINRA member and thereby frustrates FINRA members' reasonable expectations. *See Fleet Boston*, 264 F.3d at 773; *Wheat, First Secs., Inc. v. Green*, 993 F.2d 814, 820 (11th Cir. 1993); *Herbert J. Sims & Co. v. Roven*, 548 F. Supp. 2d 759, 763 (N.D. Cal. 2008); *BMA Fin. Servs., Inc. v. Guin*, 164 F. Supp. 2d 813, 819 (W.D. La 2001).

FINRA members would not have joined an organization that would compel them to arbitrate claims from any individual with whom it has even the most remote connection. I decline to adopt defendants' interpretation and find there is no connection between the parties sufficient to warrant compelling arbitration under Rule 12200. Morgan Keegan has therefore demonstrated a substantial likelihood of success on the merits.[8]

b. Threat of Irreparable Harm to Morgan Keegan if Preliminary Injunction Denied

Without a preliminary injunction, Morgan Keegan will be forced to arbitrate claims it allegedly never agreed to arbitrate. Courts have held that the harm suffered by an individual who is forced to arbitrate claims it did not agree to arbitrate is per se irreparable because it forces an

---

[8] Rule 12200 also requires that the claim arises from the FINRA member's "business activities," which the Code leaves undefined. *See* FINRA Rule 12200. I refrain from deciding whether defendants claims stem from Morgan Keegan's "business activities" because the first prong of Rule 12200, a customer relationship, is not present, thereby making the latter prong irrelevant.

individual to expend resources it cannot later recover.  *See Merrill Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003); *PainWebber Inc. v. Hartmann*, 921 F. 2d 507, 515 (3d Cir. 1990); *Roven*, 548 F. Supp. 2d at 766; *Grantal & Co. v. Steinberg*, 837 F. Supp. 85, 93 (D.N.J. 1993).  Furthermore, allowing the arbitration to continue would deprive Morgan Keegan of the opportunity to adjudicate defendants' claims in a court of law.  *See USB Secs. LLC v. Voegeli*, 684 F. Supp. 2d 351, 354 (S.D.N.Y. 2010), *aff'd*, 405 F. App'x 550 (2d Cir. 2011).  Defendants themselves admit Morgan Keegan will suffer irreparable harm if it is compelled to arbitrate claims it did not agree to arbitrate.  (Mem. Supp. Defs.' Opp. 7).

    c.  Harm to Defendants if Preliminary Injunction Granted

If Morgan Keegan's motion for a preliminary injunction is granted, the only harm defendants would suffer is a delay in their pending FINRA arbitration.  If defendants are successful in having my ruling reversed, the arbitration will resume at that point.  The harm to Morgan Keegan, on the other hand, of expending resources and losing the right to have defendants claims adjudicated in court is more significant and outweighs the potential harm to defendants.  The balance of harms, therefore, favors granting Morgan Keegan's preliminary injunction.

    d.  Public Interest Concerns

Although the public interest factor is not as significant in this particular case, to the extent it does play a role it favors Morgan Keegan.  There is a strong federal policy favoring arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983) ("The Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.").  But, it is equally well-established

that the policy favoring arbitration has limits — a party cannot be compelled to arbitrate a dispute it did not agree to submit to arbitration. *See Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989); *AT & T Techs, Inc.*, 475 U.S. at 648. Additionally, forcing parties to arbitrate when they did not agree to arbitrate disincentivizes arbitration and lowers the public's confidence in arbitration as an avenue for dispute resolution. Finally, granting a preliminary injunction in this case serves the public interest by preventing an unnecessary use of time and resources on what might ultimately prove to be an unauthorized arbitration.

III.   Conclusion

Morgan Keegan has presented a compelling case for a preliminary injunction. It has demonstrated (1) a substantial likelihood of success on the merits of its claim that there are no grounds for defendants to compel arbitration; (2) it would suffer irreparable harm if compelled to arbitrate these claims; (3) the harm to defendants' is outweighed by the harm to Morgan Keegan; and (4) granting a preliminary injunction is in the public's interest. Accordingly, Morgan Keegan's Motion for Preliminary Injunction must be granted and defendants enjoined from pursuing their claims against Morgan Keegan in arbitration before FINRA, styled *Louise Silverman Trust, Max and Louise Silverman v. Morgan Keegan & Company, Inc.*, FINRA Case No. 11-03031. A separate order to that effect is being entered herewith.[9]

---

[9] The parties have not fully briefed the issue of posting a security bond. Morgan Keegan discussed security briefly and defendants did not brief the issue at all. Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the court may issue a preliminary injunction only if the movant gives security in an amount the court deems proper to pay costs and damages sustained by a party who is wrongfully enjoined. Fed. R. Civ. P. 65(c). Defendants have not asserted any amount which would provide for security in the event they have been wrongfully restrained, and I agree with Morgan Keegan that (1) the delay in arbitration caused by the injunction does not

January 12, 2012                                          /s/
Date                                                        J. Frederick Motz
                                                                United States District Judge

---

result in damages to the defendants, and (2) the time value of money, if lost, could be recovered as prejudgment interest alongside the compensatory damage award should defendants prove successful on their claims. Thus, Morgan Keegan need not post any security.